Stephen W. Rupp, #2824
Mark C. Rose, #13855
**McKay, Burton & Thurman, P.C.**
Gateway Tower West
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 521-4135
Facsimile: (801) 521-4252
E-mail: mrose@mbt-law.com
*Attorneys for Trustee Stephen W. Rupp*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>ASHBY MEDICAL, LLC,<br><br>Debtor. | Bankruptcy Case No. 12-29810<br>(Chapter 7)<br><br>Judge Joel T. Marker<br><br>**FILED ELECTRONICALLY** |

## MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, Trustee Stephen

W. Rupp ("Trustee"), by and through undersigned counsel, hereby moves the court for an order

approving the settlement agreement (the "Agreement") between Shawn Porter ("S. Porter"),

Richard C. Porter ("R. Porter"), PERL Investments, LLC ("PERL"), Dantotsu Investments, LLC

("Dantotsu"), Crescent Ventures 3, LLC ("Crescent 3"), Crescent Ventures, LLC ("Crescent"),

Wasatch Investments, LLC ("Wasatch"), Silverglen Investments, LLC ("Silverglen") and

MillDan, LLC ("MillDan") (collectively the "Porter Affiliates"), and himself, as the Chapter 7

1

Trustee of the above-referenced bankruptcy case. A copy of the Agreement is attached hereto as Exhibit "A."

## BACKGROUND

1.   Debtor Ashby Medical, LLC ("Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 31, 2012 (the "Petition Date"), resulting in case number 12-29810 (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Utah—Central Division ("the Bankruptcy Court").

2.   Trustee is the duly appointed, qualified, and acting trustee in Debtor's Chapter 7 Bankruptcy Case. Pursuant to his duties under the Bankruptcy Code, 11 U.S.C. §704, Trustee conducted an investigation into Debtor's financial affairs and dealings.  In that investigation, Trustee discovered what he believed to be property of Debtor's bankruptcy estate in a bank account held on the Petition Date in the name of OsteoArthritis Centers of America Medical Group, P.C. (the "Bank Account Property").  Trustee also discovered various transfers of funds from Debtor to various entities, including PERL, Dantotsu, Crescent, and MillDan (the "Transfers").   After further review of the Debtor's books and records and the Debtor's transactions with the Porter Affiliates, the Trustee determined that the Transfers were avoidable transfers under 11 U.S.C. §§ 547 and/or 548.

3.   On October 7, 2013, Trustee commenced an adversary proceeding, case number No. 13-02369 (the "Adversary Proceeding"), against S. Porter, R. Porter, PERL, and other entities and individuals seeking to recover the Bank Account Property.  After the filing of the

2

Adversary Proceeding, Trustee sent a demand letter to the Porter Affiliates seeking to recover the value of the Transfers.

4.      After lengthy and extensive settlement negotiations, and to avoid the costs and uncertainty of litigation concerning the Bank Account Property and Transfers, Trustee and the Porter Affiliates, have agreed to resolve and compromise any and all claims and disputes that currently exist between them on account of the Bank Account Property, Adversary Proceeding, and Transfers, that Debtor's bankruptcy estate may have against the Porter Affiliates and *vice versa*, pursuant to the terms and conditions more fully set forth in the Agreement.

## TERMS OF SETTLEMENT AGREEMENT

1.      The material terms of the Agreement are as follows:

a.      The Porter Affiliates shall pay to Trustee, for the benefit of Debtor's bankruptcy estate, the sum of thirty thousand dollars ($30,000.00) exactly (the "Settlement Amount") as settlement in full of any and all claims related to the Bank Account Property, Adversary Proceeding, and Transfers, as well as any and all related claims associated with those events.

b.      Upon signing the Agreement, the Porter Affiliates shall deliver to Trustee, in certified funds to be deposited into Trustee's trust account for Debtor's bankruptcy estate, a check for the total Settlement Amount of thirty thousand dollars ($30,000.00).

c.      Upon the Effective Date of the Agreement (as defined in the agreement), Trustee shall release and forever discharge the Porter Affiliates, their agents, representatives, and attorneys, from any and all claims, demands, liabilities and responsibilities of every kind and

3

nature, known or unknown whatsoever, arising out of or related to the Bank Account Property, Adversary Proceeding, and Transfers, including any Transfers as of yet undiscovered by Trustee that Trustee may have otherwise sought to avoid under 11 U.S.C. §§ 547 and/or 548. Trustee shall also release and forever discharge any immediate or mediate transferees of the Bank Account Property and/or Transfers received by the Porter Affiliates.

        d.      Upon the Effective Date of this Agreement, the Porter Affiliates shall release and forever discharge Trustee, his agents, representatives, and attorneys and Debtor's bankruptcy estate from any and all claims, demands, liabilities and responsibilities of every kind and nature, known or unknown whatsoever, arising out of or related to the Bank Account Property, Adversary Proceeding or Transfers.

        e.      The Agreement still allows Trustee to pursue litigation against the remaining named and unnamed parties in the Adversary Proceeding as well as all other claims the bankruptcy estate has against all non-Porter Affiliates.

### MEMORANDUM OF LAW IN SUPPORT

In accordance with the Bankruptcy Appellate Panel for the Tenth Circuit's analysis in *C.K. Williams, Inc. v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.), 213 B.R. 1020, 1022 (B.A.P. 10th),* Trustee notes the following in support of the Agreement:

    1.    **Probability of Success of the Underlying Litigation on the Merits.**

The first *Kopexa* factor requires the court to consider the probable success of the underlying litigation on the merits. The underlying litigation, in part, is the Adversary Proceeding. The remaining litigation would need to be commenced to avoid and recover the

value of the Transfers. To avoid the costs, expense, and uncertainty of litigation, Trustee has attempted, in good-faith, to negotiate a settlement of the bankruptcy estate's claims against the Porter Affiliates without the need to continue with formal litigation. While Trustee believes he would be successful in litigating his claims against the Porter Affiliates, Trustee believes the Agreement is appropriate and in the best interests of creditors given (a) the inherent risk that Trustee may not prevail on his claims against the Porter Affiliates in the Adversary Proceeding and/or subsequent litigation over the Transfers; (b) the amount in question and the time and cost associated with litigating the bankruptcy estate's claims against the Porter Affiliates; and (c) the fact that the Porter Affiliates have agreed to pay the bankruptcy estate a settlement amount of $30,000.00, which the Porter Affiliates have already paid in full.

> 2. **Difficulty in Collection of a Judgment.**

The second *Kopexa* factor requires the court to consider the possible difficulty in collecting any judgment against the Porter Affiliates. The Agreement provides for payment of a Settlement Amount rather than having to litigate towards obtaining a money judgment that must then be collected. It should be noted that collection of a judgment against several of the Porter Affiliates may be difficult given the likelihood that some or all of the Porter Affiliates are defunct and/or insolvent. At the present time, under the Agreement, collection of a money judgment is not an issue in light of the Porter Affiliates' agreement to pay the Settlement Amount of $30,000.00, all of which has been paid.

3.      **The Complexity and Expense of the Litigation.**

The third *Kopexa* factor requires the court to consider the complexity and expense of any litigation. As set forth above, litigation of the bankruptcy estate's claims against the Porter Affiliates would be expensive and would likely require expert testimony. Under the Agreement, any speculation, cost, expense or risk of litigation is avoided. Trustee notes that the financial benefit of the Agreement to the bankruptcy estate is greater than the anticipated financial benefit to the bankruptcy estate in the event the matter has to be litigated in view of the cost, expense, and risk of litigation and collection of a judgment.

4.      **The Interest of Creditors and Deference to their Reasonable Views.**

The fourth and final *Kopexa* factor looks at the interests of creditors in deference to their reasonable views. The very purpose of this motion and accompanying notice of hearing is to give notice to creditors in order that they might respond or express any interest or views which Trustee has not fully considered. This motion gives all parties-in-interest an opportunity to express their reasonable views and any interests which argue against the Agreement. As noted above, Trustee believes, in his business judgment, that the Agreement is in the best interest of creditors and the bankruptcy estate and that the benefit of the Agreement exceeds the financial benefit that might be realized if the matter were litigated rather than settled. By negotiating a settlement of the bankruptcy estate's claims against the Porter Affiliates without continued litigation, Trustee has avoided the costly delays and expenses associated with litigation.

## CONCLUSION

Based on the foregoing, Trustee respectfully requests that the court grant this motion and enter an order approving the Agreement.

DATED this 29th day of May, 2014.

**MCKAY, BURTON & THURMAN, P.C.**

_____/s/ Mark C. Rose_____
Mark C. Rose
*Attorneys for Trustee Stephen W. Rupp*

7

# EXHIBIT "A"

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made and entered into as of the 19th day of May, 2014, but effective as of the Effective Date (as defined below), by and between Chapter 7 Trustee Stephen W. Rupp ("Trustee"), on the one hand, and Shawn Porter ("S. Porter"), Richard C. Porter ("R. Porter"), PERL Investments, LLC ("PERL"), Dantotsu Investments, LLC ("Dantotsu"), Crescent Ventures 3, LLC ("Crescent 3"), Crescent Ventures, LLC ("Crescent"), Wasatch Investments, LLC ("Wasatch"), Silverglen Investments, LLC ("Silverglen") and MillDan, LLC ("MillDan") (collectively the "Porter Affiliates"), on the other hand. Trustee and Porter Affiliates are sometimes referred to herein individually as a "Party" or collectively as the "Parties."

## RECITALS

A.     Debtor Ashby Medical, LLC ("Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 31, 2012 (the "Petition Date"), resulting in case number 12-29810 (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Utah—Central Division ("the Bankruptcy Court").

B.     Trustee is the duly appointed, qualified, and acting trustee in Debtor's Chapter 7 Bankruptcy Case. Pursuant to his duties under the Bankruptcy Code, 11 U.S.C. §704, Trustee conducted an investigation into Debtor's financial affairs and dealings. In that investigation, Trustee discovered what he believed to be property of Debtor's bankruptcy estate in a bank account held on the Petition Date in the name of OsteoArthritis Centers of America Medical Group, P.C. (the "Bank Account Property"). Trustee also discovered various transfers of funds from Debtor to various entities, including PERL, Dantotsu, Crescent, and MillDan (the "Transfers"). After further review of the Debtor's books and records and the Debtor's transactions with the Porter Affiliates, the Trustee determined that the Transfers were avoidable transfers under 11 U.S.C. §§ 547 and/or 548.

C.     On October 7, 2013, Trustee commenced an adversary proceeding, case number No. 13-02369 (the "Adversary Proceeding"), against S. Porter, R. Porter, PERL, and other entities and individuals seeking to recover the Bank Account Property. After the filing of the Adversary Proceeding, Trustee sent a demand letter to the Porter Affiliates seeking to recover the value of the Transfers.

D.     After lengthy and extensive settlement negotiations, and to avoid the costs and uncertainty of litigation concerning the Bank Account Property and Transfers, Trustee and the Porter Affiliates, have agreed to resolve and compromise any and all claims and disputes that currently exist between them on account of the Bank Account Property, Adversary Proceeding, and Transfers, that Debtor's bankruptcy estate may have against the Porter Affiliates and *vice versa*, pursuant to the terms and conditions more fully set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing recitals of fact, and subject to the approval of the Bankruptcy Court in the Bankruptcy Case, the Parties hereto agree as follows:

1.      Effectiveness of Agreement. This Agreement shall become effective upon the entry of an order by the Bankruptcy Court in the Bankruptcy Case approving this Agreement. The date of entry of the Bankruptcy Court's order approving this Agreement is herein referred to as the "Effective Date." Upon execution of this Agreement by all parties, Trustee shall file a motion with the Bankruptcy Court seeking approval of this Agreement and provide notice of the motion to all parties-in-interest entitled to such notice in the Bankruptcy Case.

2.      Settlement Terms. The Porter Affiliates shall pay to Trustee, for the benefit of Debtor's bankruptcy estate, the sum of thirty thousand dollars ($30,000.00) exactly (the "Settlement Amount") as settlement in full of any and all claims related to the Bank Account Property, Adversary Proceeding, and Transfers, as well as any and all related claims associated with those events.

3.      Payment of Settlement Amount; Transfer of Ownership Interest.   Upon signing this Agreement, the Porter Affiliates shall deliver to Trustee, in certified funds to be deposited into Trustee's trust account for Debtor's bankruptcy estate, a check for the total Settlement Amount of thirty thousand dollars ($30,000.00). Trustee shall hold such funds in trust until an order from the Bankruptcy Court approving this Agreement is entered. The Settlement Amount shall be made payable to "Stephen W. Rupp, Trustee" and sent to:

**MCKAY, BURTON & THURMAN, P.C.**
**c/o: Stephen W. Rupp**
**Attn: Mark C. Rose**
**15 West South Temple, Suite 1000**
**Salt Lake City, UT 84101**

To the extent the Porter Affiliates pay any part of the Settlement Amount, including the thirty thousand dollars ($30,000.00), to Trustee before this Agreement has been approved by the Bankruptcy Court, Trustee shall maintain such Settlement Amount funds in trust until the Agreement is approved by the Bankruptcy Court. In the event that the Agreement is not approved by the Bankruptcy Court, Trustee shall return said Settlement Amount funds to the Porter Affiliates within three (3) business days after the entry of the Bankruptcy Court's order disapproving this Agreement.

4.      Due Diligence and Representation by Counsel. Trustee and the Porter Affiliates covenant, warrant, and represent that they have, through their individual efforts and through their attorneys, and any other persons they deem necessary, investigated to their full satisfaction all facts and law surrounding the various claims, controversies, damages, and disputes related to, directly or indirectly, the Bank Account funds, Adversary Proceeding, and Transfers. Trustee and the Porter Affiliates covenant, warrant, and represent that each of them executes this Agreement according to his/her/its own free will and acts without time constraints, fraud, duress, or undue coercion or influence of any kind.

5.    Release of Claims by the Trustee. Upon the Effective Date of this Agreement, Trustee shall release and forever discharge the Porter Affiliates, their agents, representatives, and attorneys, from any and all claims, demands, liabilities and responsibilities of every kind and nature, known or unknown whatsoever, arising out of or related to the Bank Account Property, Adversary Proceeding, and Transfers, including any Transfers as of yet undiscovered by Trustee that Trustee may have otherwise sought to avoid under 11 U.S.C. §§ 547 and/or 548. Trustee shall also release and forever discharge any immediate or mediate transferees of the Bank Account Property and/or Transfers received by the Porter Affiliates.

6.    Release of Claims by the Porter Affiliates. Upon the Effective Date of this Agreement, the Porter Affiliates shall release and forever discharge Trustee, his agents, representatives, and attorneys and Debtor's bankruptcy estate from any and all claims, demands, liabilities and responsibilities of every kind and nature, known or unknown whatsoever, arising out of or related to the Bank Account Property, Adversary Proceeding or Transfers.

7.    Bankruptcy Court Approval. The Parties acknowledge that this Agreement is subject to notice to all parties-in-interest in the Bankruptcy Case and approval of the Bankruptcy Court.

8.    Governing Law. This Agreement and the rights and obligations of the Parties hereunder shall be construed in accordance with and governed by the laws of the State of Utah, except to the extent such laws are superseded by the laws of the United States of America, and in such instances, the laws of the United States shall control.

9.    Attorneys' Fees and Costs. Except as otherwise provided in this Agreement, the Parties shall bear their own attorneys' fees and costs arising from or related to the execution of this Agreement. In the event of any litigation or dispute resolution relating to this Agreement, the prevailing Party shall be entitled to collect from the other Party to such litigation or dispute resolution any and all reasonable costs (including reasonable attorneys' fees) incurred by the prevailing Party in connection with such litigation or dispute resolution. Such relief shall be in addition to any other relief to which the prevailing Party may be entitled.

10.   Additional Actions to Effectuate Settlement. Each of the Parties shall execute such additional documents, perform such additional acts, and take such additional steps as may be reasonable or necessary to implement the provisions and intent of this Agreement.

11.   Binding Effect; Entire Agreement; Amendment. This Agreement is binding upon and shall inure to the benefit of the Parties and their respective heirs, successors, and assigns, officers, directors, employees, agents, attorneys and representatives, subrogees, and to all persons or entities claiming by, through or under them. This Agreement is fully integrated and represents the entire understanding between the Parties, and there are no written or oral agreements between them which are not set forth herein. None of the provisions of this Agreement may be changed, discharged or terminated orally and may be modified or amended only by an instrument in writing, signed by all Parties. Likewise the rights available to each of the Parties under this Agreement cannot be waived or released orally, and may be waived or released only by an instrument in writing, signed by the Party whose rights will be diminished or adversely affected by the waiver.

12.    Severability.   Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Furthermore, all other provisions not so prohibited or unenforceable shall remain effective.

13.    Retention of Jurisdiction. The Bankruptcy Court shall retain exclusive jurisdiction to adjudicate any controversy, dispute or claim arising out of or in connection with this Agreement, or the breach, termination, or validity thereof.

14.    Advice of Counsel. Each Party acknowledges that it has been represented by counsel in the negotiation and preparation of this agreement (or has been advised to obtain the advice and assistance of counsel) and that such Party (and, if applicable, such Party's counsel) have participated in and contributed to drafting this Agreement. Accordingly, this Agreement shall be construed as if the Parties jointly prepared it, and any uncertainty or ambiguity in the Agreement shall not be interpreted against any one party.

15.    Captions. The captions and headings are for reference and convenience only and shall not affect the construction or interpretation of any of the terms of this Agreement.

16.    No Inducement. The Parties represent, warrant, and agree that upon executing and entering into this Agreement, they, and each of them, are not relying upon and have not relied upon any representation, promise, or statement made by anyone which is not recited, contained, or embodied in this Agreement.

17.    No Admissions.   The Parties acknowledge and agree that this Agreement represents a settlement of disputed facts and claims. Nothing contained herein may be construed as an admission of guilt, fault, liability, or wrongdoing, on the part of either Party.

18.    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one and the same Agreement. Facsimile or e-mailed signatures by PDF shall have the same force and effect as original signatures.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGES TO FOLLOW]

**IN WITNESS WHEREOF**, the Parties hereto execute this Agreement as follows:

_____          Dated this 27 day of _May_ , 2014.
Shawn Porter

State of _Arizona_          )
County of _Maricopa_          )

    On this 27th day of _MAY, 2014_ , before me, _JACK SHAW_ , a notary public, personally appeared Shawn Porter, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

JACK SHAW
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
August 5, 2015

_____
Notary Public


_____          Dated this ___ day of _____, 2014.
Richard C. Porter

State of _____          )
County of _____          )

    On this _____ day of _____, before me, _____, a notary public, personally appeared Richard C. Porter, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

_____
Notary Public

**IN WITNESS WHEREOF**, the Parties hereto execute this Agreement as follows:

_____            Dated this ___ day of _____, 2014.
Shawn Porter

State of _____          )
County of _____      )

     On this _____ day of _____, before me, _____, a
notary public, personally appeared Shawn Porter, proved on the basis of satisfactory evidence to
be the person whose name is subscribed to this instrument, and acknowledged that he/she
executed the same. Witness my hand and official seal.


                                    _____
                                      Notary Public


_____            Dated this 28 day of May, 2014.
Richard C. Porter

State of Arizona             )
County of Maricopa           )

     On this 28 day of May, before me, D Villanueva, a
notary public, personally appeared Richard C. Porter, proved on the basis of satisfactory
evidence to be the person whose name is subscribed to this instrument, and acknowledged that
he/she executed the same. Witness my hand and official seal.


                                      _____
                                      Notary Public

```
        OFFICIAL SEAL
        D. VILLANUEVA
  NOTARY PUBLIC - State of Arizona
         MARICOPA COUNTY
  My Comm. Expires Dec. 16, 2014
```

**PERL INVESTMENTS, LLC**

By: Shawn Porter

Its: Manager

Dated this 27th day of ____May____, 2014.

State of ARIZONA   )
County of MARICOPA )

On this 27th day of MAY, 2014, before me, JACK SHAW, a notary public, personally appeared Shawn Porter, as Manager of PERL Investments, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

JACK SHAW
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
August 5, 2015

Notary Public

**DANTOTSU INVESTMENTS, LLC**

By: Shawn Porter

Its: Manager

Dated this 27th day of ____May____, 2014.

State of ARIZONA   )
County of MARICOPA )

On this 27th day of MAY, 2014, before me, JACK SHAW, a notary public, personally appeared Shawn Porter, as Manager of Dantotsu Investments, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

JACK SHAW
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
August 5, 2015

Notary Public

**CRESCENT VENTURES 3, LLC**

By: _Shawn Porter_                 Dated this 27th day of _May_, 2014.
Its: _Manager_

State of _ARIZONA_          )
County of _MARICOPA_       )

    On this 27th day of _May, 2014_, before me, _Jack Shaw_, a notary public, personally appeared _Shawn Porter_, as _Manager_ of Crescent Ventures 3, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

JACK SHAW
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
August 5, 2015

_Jack Shaw_
Notary Public

**SILVERGLEN INVESTMENTS, LLC**

    Dated this ___ day of _____, 2014.

By:_____
Its:_____

State of _____  )
County of _____ )

    On this ___ day of _____, before me, _____, a notary public, personally appeared _____, as _____ of Silverglen Investments, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

_____
Notary Public

**CRESCENT VENTURES 3, LLC**

_____     Dated this \_\_\_ day of _____, 2014.
By:_____
Its: _____

State of _____    )
County of _____    )

On this \_\_\_\_\_ day of _____, before me, _____, a notary public, personally appeared _____, as _____ of Crescent Ventures 3, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

_____
Notary Public

**SILVERGLEN INVESTMENTS, LLC**

By: Richard C. Porter     Dated this 28 day of May, 2014.
Its: Manager

State of Arizona    )
County of maricopa    )

On this 28 day of May, before me, D Villanueva, a notary public, personally appeared Richard Porter, as Member of Silverglen Investments, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

OFFICIAL SEAL
D. VILLANUEVA
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Dec. 16, 2014

_____
Notary Public

**MILLDAN, LLC**

By: _Shawn Porter_
Its: _Manager_

Dated this 27th day of _May_, 2014.

State of _ARIZONA_        )
County of _MARICOPA_      )

On this 27th day of _MAY, 2014_, before me, _JACK SHAW_, a notary public, personally appeared _Shawn Porter_, as _Manager_ of MillDan, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

JACK SHAW
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
August 5, 2015

_____
Notary Public

**CRESCENT VENTURES, LLC**

By: _Shawn Porter_
Its: _Manager_

Dated this 27th day of _May_, 2014.

State of _ARIZONA_        )
County of _MARICOPA_      )

On this 27th day of _May, 2014_, before me, _JACK SHAW_, a notary public, personally appeared _Shawn Porter_, as _Manager_ of Crescent Ventures, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

JACK SHAW
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
August 5, 2015

_____
Notary Public

**WASATCH INVESTMENTS, LLC**



By: Shawn Porter

Its: Member

Dated this 29th day of May, 2014.

State of ARIZONA    )
County of MARICOPA    )

On this 27th day of MAY, 2014, before me, JACK SHAW, a notary public, personally appeared Shawn Porter, as Member of Wasatch Investments, LLC, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that he/she executed the same. Witness my hand and official seal.

JACK SHAW
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
August 5, 2015

Notary Public



Stephen W. Rupp
*Trustee*

Dated this 29 day of May, 2014.

State of Utah    )
County of Salt Lake    )

On this 29th day of may, 2014, before me, Karin Powell, a notary public, personally appeared Stephen W. Rupp, proved on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument, and acknowledged that she executed the same. Witness my hand and official seal.

KARIN P. POWELL
Notary Public State of Utah
My Commission Expires on:
March 24, 2018
Comm. Number: 675899

Notary Public